UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRAINTREE LABORATORIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-cv-6851-AJN |
| ) | ECF Case |
| CYPRESS PHARMACEUTICAL, INC., ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| Defendant. ) | |

**STATEMENT PURSUANT TO LOCAL RULE 56.1
IN SUPPORT OF CYPRESS PHARMACEUTICAL, INC.'S MOTION
FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

Defendant Cypress Pharmaceutical Inc. ("Cypress") submits, pursuant to the Federal Rules of Civil Procedure and Local Rule 56.1, this Statement of Material Facts in support of its Motion for Summary Judgment of Noninfringement.

The exhibits cited in this Statement of Material Facts are attached to the Declaration of Lisa N. Phillips in Support of Cypress Pharmaceutical, Inc.'s Motion for Summary Judgment, submitted herewith. In connection with this summary judgment motion, the parties have stipulated to certain facts. These facts are set forth in the parties' joint Stipulated Facts for Purposes of Cypress' Motion for Summary Judgment of Noninfringement, submitted herewith. When appropriate, Cypress has cited these stipulated facts herein as "SF__." The following facts are beyond genuine dispute and compel summary judgment on Cypress' motion:

### THE PROPOSED LABELING FOR CYPRESS' ANDA PRODUCT AND THE FDA-APPROVED LABEL FOR SUPREP®

1. Cypress Pharmaceutical, Inc. ("Cypress") is the owner of Abbreviated New Drug Application ("ANDA") No. 204135, for a generic version of Braintree's SUPREP® drug product (the "Cypress ANDA Product"). SF9.

2. The proposed labeling for Cypress' ANDA Product contains an "Indications and Usage" section, which states in full: "Sodium Sulfate, Potassium Sulfate, and Magnesium Sulfate Oral Solution Bowel Prep Kit is indicated for cleansing of the colon as a preparation for colonoscopy in adults." Ex. A, CYPRESS000038. *See also*, SF20.

3. Braintree holds approved New Drug Application ("NDA") No. 22372 for SUPREP® Bowel Prep Kit ("SUPREP"). SF1.

4. The proposed labeling for Cypress' ANDA Product is the same, in all relevant and material respects, as Braintree's FDA-approved label for SUPREP. SF28. *See also*, Ex. B; SF42; SF43.

5. Cypress' proposed generic version of SUPREP has the same composition, dosage form and route of administration as Braintree's SUPREP.  SF13.

6. The sole FDA-approved indication for the SUPREP product is "cleansing of the colon as a preparation for colonoscopy in adults."  Ex. B, CYPRESS000134.  *See also*, SF4; SF42; SF43.

7. Cypress' ANDA Product will be sold as a kit containing two six ounce bottles of concentrated sodium sulfate, potassium sulfate, and magnesium sulfate solution.  Ex. A, CYPRESS000036, CYPRESS000039.  *See also*, SF22.

8. According to the proposed label for Cypress' proposed generic version of SUPREP, each six ounce bottle of Cypress' generic version of SUPREP must be diluted with water to sixteen ounces prior to administration.  SF23.

9. Sixteen ounces ("oz") is equal to approximately 473 milliliters ("ml").  SF27.

10. The proposed labeling for Cypress' ANDA product, in the Warnings and Precautions section of the Highlights of Prescribing Information, states: "Not for direct ingestion - dilute and take with additional water (5.8)."  Ex. A, CYPRESS000037.

11. Paragraph 5.8 of the Warnings and Precautions section of the proposed labeling for Cypress' ANDA product states:

> 5.8 **Not for Direct Ingestion**
> Each bottle must be diluted with water to a final volume of 16 oz and ingestion of additional water as recommended is important to patient tolerance. Direct ingestion of the undiluted solution may increase the risk of nausea, vomiting, dehydration, and electrolyte disturbances.

Ex. A, CYPRESS000041.

12. The following is a true and accurate excerpt of the proposed labeling for Cypress' ANDA product, showing the "Dosage and Administration" section of the Full Prescribing Information:

3

> 2 **DOSAGE AND ADMINISTRATION**
>
> Sodium sulfate, potassium sulfate, and magnesium sulfate oral solution bowel prep kit should be taken as a split-dose oral regimen.
>
> The dose for colon cleansing requires administration of two bottles of sodium sulfate, potassium sulfate, and magnesium sulfate oral solution bowel prep kit. Each bottle is administered as 16 oz of diluted sodium sulfate, potassium sulfate, and magnesium sulfate oral solution bowel prep kit with an additional 1 quart of water taken orally. The total volume of liquid required for colon cleansing (using two bottles) is 3 quarts (approximately 2.8 L) taken orally prior to the colonoscopy in the following way:
>
> **Split-Dose (Two-Day) Regimen**
>
> Day prior to colonoscopy:
>
> - A light breakfast may be consumed, or have only clear liquids on the day before colonoscopy. Avoid red and purple liquids, milk, and alcoholic beverages.
> - Early in the evening prior to colonoscopy: pour the contents of one bottle of sodium sulfate, potassium sulfate, and magnesium sulfate oral solution bowel prep kit into the mixing container provided. Fill the container with water to the 16 oz fill line, and drink the entire amount.
> - Drink two additional containers filled to the 16 oz line with water over the next hour.
>
> Day of colonoscopy:
>
> - Have only clear liquids until after the colonoscopy. Avoid red and purple liquids, milk, and alcoholic beverages.
> - The morning of colonoscopy (10 to 12 hours after the evening dose): pour the contents of the second bottle of sodium sulfate, potassium sulfate, and magnesium sulfate oral solution bowel prep kit into the mixing container provided. Fill the container with water to the 16 oz fill line, and drink the entire amount.
> - Drink two additional containers filled to the 16 oz line with water over the next hour.
> - Complete all sodium sulfate, potassium sulfate, and magnesium sulfate oral solution bowel prep kit and required water at least one hour prior to colonoscopy.

Ex. A, CYPRESS000038-39. *See also*, SF23; SF33; SF34; SF40.

13. The proposed label for Cypress' proposed generic version of SUPREP contained in ANDA No. 204135 instructs healthcare professionals how to prescribe and patients how to use Cypress' proposed generic version of SUPREP. SF30.

14. The Cypress ANDA Product, administered according to its proposed label, requires the patient to consume two 16 ounce containers (*i.e.*, 946 ml) of sodium sulfate, potassium sulfate, and magnesium sulfate aqueous solution. Ex. A, CYPRESS000038-39. *See also*, SF33, SF34; SF36.

15. The SUPREP product, administered according to its FDA-approved label, also directs the patient to consume two 16 ounce containers (about 473 ml each for a total of about 946 ml) of sodium sulfate, potassium sulfate, and magnesium sulfate aqueous solution in two administrations during the treatment period. SF35.

16. The proposed labeling for Cypress' ANDA Product states "The dose for colon cleansing requires administration of two bottles of sodium sulfate, potassium sulfate, and magnesium sulfate oral solution bowel prep kit." SF33. *See also*, SF34.

17. Cypress' proposed labeling does not include any indication for the Cypress ANDA Product that would involve administration of only a single bottle of the Cypress ANDA Product. Ex. A. *See also*, SF20; SF33; SF34.

## THE '149 PATENT

18. The Abstract of the '149 Patent states:

> The field of colonic diagnostic and surgical procedures is hampered by the lack of optimal means available to cleanse the colon. A compromise between convenient, distasteful, solid or low volume, hyperosmotic solutions which cause considerable fluid and electrolyte imbalances in patients and large volume, difficult to consume, iso-osmotic solutions has had to be made heretofore.

Ex. D, Abstract.

19. The '149 Patent states:

> There are two currently used methods used for colonic lavage. These are: (1) gastrointestinal lavage with 4 liters of a balanced solution that causes negligible net water or electrolyte absorption or secretion or (2) oral ingestion of small volumes of concentrated (hypertonic) sulfate or

>   sodium phosphate solutions, e.g. Fleet Phospho-Soda, or the non-aqueous tablet formulations of phosphates or salts, all of which cause clinically significant effects on bodily chemistry.
>
>   Clinical trials have shown use of the 4 liter balanced solution to be safe and efficacious. However, compliance is poor because of the large volume of solution that must be rapidly ingested. Additionally, these large volume solutions are not well tolerated by patients.

Ex. D, 3:59-4:5.

20. The "Background Information" section of the '149 Patent discusses the "brand name Fleets Phospho-Soda$^{TM}$" formulation, stating:

>   Patients are typically required to take two (2) three ounce doses of this preparation, separated by a three to 12 hour interval for a total of six ounces (180 ml), which is a significant reduction compared to the large 1 gallon volumes required by the high volume preparations. . . .
>
>   These small volume sulfate/phosphate solutions and non-aqueous formulations have been shown to cause massive electrolyte and fluid shifts that are clinically significant to the patient . . . .

Ex. D, 2:31-36, 2:41-43.

21. The "Examples" section of the '149 Patent states that "Fleet Phospho-Soda . . . 90 mL, was added to 240 mL of water, for a volume of 330 mL. One half of this diluted solution was ingested by the subjects on two occasions, at 7 p.m. on day 1 and again at 5 a.m. on day 2." Ex. D, 5:56-61.

22. The '149 Patent states: "The ingested experimental solutions were also 330 mL in volume . . . One half of each experimental solution was ingested by the subjects on two occasions, at 7 p.m. on day 1 and at 5 a.m. on day 2." Ex. D, 5:64-6:3.

23. During prosecution of the '149 patent, the inventors distinguished their invention from several prior art disclosures of larger volume colon cleansing preparations. Ex. E, 9-11; Ex. F, 9-10; Ex. H, 1; Ex. J, 4.

24. During prosecution of the '149 Patent, Braintree distinguished U.S. Patent No. 6,235,745 ("Megens"), stating in part:

> Furthermore, Megens' broadest teaching when combined with Davis does <u>not</u> teach the Applicants' claimed composition for inducing purgation of the colon comprising <u>a small volume</u> of an aqueous <u>hypertonic</u> solution (*e.g.*, about 100 ml to about 500 ml) comprising one or more salts selected from the group consisting of $Na_2SO_4$, $MgSO_4$, and $K_2SO_4$, with or without an effective amount of PEG, or a method for inducing colonic purgation comprising the steps of providing the aforementioned composition. Megens' test subjects were small dogs weighing no more than about 30 pounds. If extrapolated to average adult human weight, (e.g., about 150 lbs.) that volume would be about 1 liter to about 1.5 liters, not <u>a small volume</u> (e.g., about 100 ml to about 500 ml) claimed in the instant invention.

Ex. E, p. 11 (emphasis in original).

25. The '149 Patent originally issued with claims to "small volume" compositions. *See, e.g.*, Ex. D, 11:65-12:5, 12:23-30, 12:63-13:2, 13:10-16.

26. Braintree requested *ex parte* reexamination of the '149 Patent, and submitted proposed claims that replaced the term "small volume" in all claims with "about 100 ml to about 500 ml." Ex. F; Ex. G.

27. Braintree distinguished each of the prior art references Russell, Nissho, and Guiliani in part by stating that those references do not disclose the use of "about 100 ml to about 500 ml." Ex. F, at 9-10; Ex. J, at 4.

28. Braintree argued the patentability of the claimed compositions over Nissho by, among other things, stating: "Nor does Nissho disclose the use of about 100 ml to about 500 ml, rather Nissho discloses the use of 2 liters. Nissho fails to disclose or even suggest the use of the claimed combination of salts at a significantly lower volume." Ex. F, 10; *see also* Ex. H, 1.

29. Nissho states that dilution of a powder composition with "additional water … to make a total volume of two liters" resulted in preparation of "an emulsified liquid agent (i.e., lavage solution according to the present invention) for one administration." Ex. L, 4:3-10.

30. Braintree argued the patentability of the claimed compositions over Giuliani by, among other things, stating: "While Giuliani discloses $Na_2SO_4$, Giuliani does not disclose a composition containing $Na_2SO_4$, $MgSO_4$, and $K_2SO_4$ (p. 3, 1. 23). With regard to the volume, Giuliani discloses 4 L (p. 3, 1. 20), not about 100 ml to about 500 ml." Ex. J, 4.

31. Guiliani discloses a "Formula for one dose to make 0.5 litres of extemporaneous solution," and lists "Gastrointestinal wash maximum dose 4 l." Ex. K, 3:15-20.

32. The United States Patent and Trademark Office issued a Reexamination Certificate of the '149 Patent on June 30, 2009. Ex. C.

33. Following reexamination, the only independent claims of the '149 Patent are claims 2, 7, 15, and 18. Ex. C.

34. Following reexamination, every claim of the '149 Patent requires a composition "comprising from about 100 ml to about 500 ml of an aqueous hypertonic solution." Ex. C; Ex. D, 11:65-14:20.

35. Claim 15, as amended through reexamination, is representative of the composition claims at issue in this case, and reads:

> 15. A composition for inducing purgation of the colon of a patient, the composition comprising from about 100 ml to about 500 ml of an aqueous hypertonic solution comprising an effective amount of $Na_2SO_4$, an effective amount of $MgSO_4$, and an effective amount of $K_2SO_4$, wherein the composition does not produce any clinically significant electrolyte shifts and does not include phosphate.

Ex. C, 2:23-31.

36. Claim 20 is representative of the method claims at issue in this case, and reads:

> A method for including colonic purgation in a patient, comprising the steps of:
>
> (a) orally administering an effective amount of the composition of claim 15 to a patient; and
>
> (b) allowing the administered composition to induce colonic purgation.

Ex. D, 14:3-8. *See also*, Ex. C., 2:23-31 (independent claim 15, as amended through reexamination).

37. Claim 23 depends from claim 20 and reads:

> A method for inducing colonic purgation in a patient according to claim 20, wherein the effective amount of the composition is administered in two or more doses within a treatment period.

Ex. D, 14:15-19.

38. Braintree filed a Request for Extension of Patent Term on September 30, 2010. Ex. M, 1.

39. In its Request for Extension of Patent Term, Braintree stated:

> The SUPREP product comprises a small volume. Specifically, the product contains only 2 x 16 ounces of solution (*i.e.*, approximately 2 x 0.47 L = .94 L of solution), as indicated in the approved label (Exhibit 3). The '149 specification defines "small volume" as less than one liter of water, *e.g.*, 100-500 ml of water (see column 5, lines 15-20). Moreover, claim 17, which depends from claim 15, requires that the "solution is from about 100 ml to about 500 ml in volume." Based on the doctrine of claim differentiation, it is evident that "small volume" includes a volume of at least 100 ml to 500 ml, e.g., a volume higher than 500 ml, such as the 0.94L solution in the SUPREP product.

Ex. M, at 11.

9

Dated:  July 15, 2013							Respectfully submitted,


								*/s/  Steven Lieberman*
								Steven Lieberman
								Lisa N. Phillips (Admitted *Pro Hac Vice*)
								ROTHWELL, FIGG, ERNST &
								MANBECK, P.C.
								607 14th Street, NW, Suite 800
								Washington, DC  20005
								Tel:  (202) 783-6040
								Fax: (202) 783-6031
								slieberman@rfem.com
								lphillips@rfem.com

								*Attorneys for Defendant*
								*Cypress Pharmaceutical, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 15, 2013, a true and correct copy of the foregoing **STATEMENT PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF CYPRESS PHARMACEUTICAL, INC.'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT** was filed through the Court's Electronic Filing System (ECF), and was served electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                        */s/ Erik van Leeuwen*
                                        Erik van Leeuwen
                                        Litigation Operations Manager
                                        Rothwell, Figg, Ernst & Manbeck, P.C.